UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILTROBER HERNANDEZ,

    Plaintiff,

v.                                                            Case No: 8:20-cv-316-CEH-CPT

PASCO COUNTY SHERIFF'S
OFFICE, CHRISTOPHER NOCCO,
BRAD CLARK, CHRISTOPHER
STARNES, ADAM TELLIER,
RUSSELL MEISSNER and STEPHEN
MCINNES,

    Defendants.

## **ORDER**

This cause comes before the Court upon the Motion for Summary Judgment filed by Defendants, Sheriff Christopher Nocco, Brad Clark, Russell Meissner, Steve McInnis, and Adam Tellier (Doc. 66), the Motion for Summary Judgment filed by Defendant Christopher Starnes (Doc. 70), the corresponding responses (Docs. 73, 74), and the replies (Docs. 77, 78). The parties have also filed a stipulation of agreed material facts (Doc. 83) and supporting evidence (Docs. 67, 68, 69).

Having reviewed the evidence presented and considered the arguments of counsel in their submissions and at oral argument, the Court will grant Defendants' Motions for Summary Judgment as to Count II, in which Plaintiff alleges that Defendants violated his First Amendment right to free speech and seeks damages

pursuant to 42 U.S.C. § 1983. The Court declines to exercise its supplemental jurisdiction over the remaining state-law claims.

## I.   FACTUAL BACKGROUND[1]

### A. Underlying Investigation

In December 2015, the Pasco County Sheriff's Office was working on a narcotics-related investigation in Dade City, Florida.[2] Doc. 83 ¶ 1. A month later, based on information provided by a confidential informant ("CI"), Homero Camacho became the main subject of the investigation. *Id.* ¶ 2. In August of 2016, another CI provided information that Eder Alonso Cruz Lopez ("Cruz") was involved in methamphetamine trafficking with Camacho. *Id.* ¶ 4. Defendant Clark subsequently confirmed through inmate call records from the Pasco County Jail that Cruz was in contact with Camacho. *Id.* ¶ 5. Deputies conducted surveillance of 7166 Glory Road in Zephyrhills, Florida, where they believed Camacho lived. *Id.* ¶ 6; Doc. 70-1 at 27–28; Doc. 66-2 at 11–14. They had reason to believe that Plaintiff Wiltrober Hernandez ("Plaintiff") also lived there based on intelligence gathered from CIs and surveillance, even though the Driver and Vehicle Information Database listed Plaintiff's address as

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the statement of agreed material facts (Doc. 83) and the depositions, affidavits, and other supporting evidence filed by the parties (Docs. 66, 67, 68, 69, 70, 73, 74). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

[2] At all times relevant to the investigation and ultimate arrest of Plaintiff in this case, Defendant Nocco was the Sheriff of Pasco County, Florida, and Defendants Clark, Starnes, Tellier, Meissner, and McInnis were Pasco County Sheriff's Office deputies. Doc. 81 ¶ 10.

7062 Glory Road. Doc. 83 ¶ 3; Doc. 70-1 at 27–28. Their belief was reinforced by the fact that vehicles registered to Plaintiff were observed at 7166 Glory Road on numerous occasions. *See* Doc. 67-1 at 62–64; Doc. 70-1 at 65. Separately, deputies received information from a CI that suggested Cruz was obtaining his narcotics supply from 7166 Glory Road. Doc. 66-1 at 14; Doc. 67-1 at 49.

Investigators placed a GPS tracker on Cruz's car and a pen register on his cellphone. Doc. 83 ¶ 9. On several occasions, they observed Cruz driving to 38244 Ruth Avenue in Zephyrhills, the address of Luis David Martinez Verde ("Martinez Verde"). *Id.* ¶¶ 11–12; Doc. 66-1 at 29–32. Deputies observed Cruz traveling to the area of the Ruth Avenue address after a controlled drug buy from Defendant Meissner, and GPS tracking of his vehicle showed that he would often go to the address before and after conducting drug transactions. Doc. 83 ¶¶ 13–14. As a result, they believed he was obtaining drugs there. *Id.* ¶ 16. They also observed that Cruz often called or received a call from his source of supply around the time he arrived at the address. Doc. 67-1 at 67, 84–85. During surveillance of the Ruth Avenue address in August, September, and October of 2016, a vehicle registered to Plaintiff was also seen parked there—sometimes at the same time that Cruz was there. Doc. 83 ¶ 12.

**B. Cruz's Arrest and Proffer**

Through investigation, the Defendants also learned that Cruz was involved in illegal drug activity with Alfred Grabowski ("Grabowski"). *Id.* ¶ 15. In early January 2017, Pasco deputies conducting surveillance saw Cruz enter the property at 7166 Glory Road and then appear with a black package before driving to Grabowski's

3

house. *Id.* ¶ 18. They then witnessed a male exit Cruz's vehicle with a multicolored bag. *Id.* On March 2, 2017, Grabowski's residence was searched pursuant to a warrant, and trafficking amounts of illegal narcotics, firearms, and currency were found. *Id.* ¶ 19. Several weeks later, Cruz was arrested and charged with multiple counts of trafficking in methamphetamine and cocaine, and illegal use of a two-way communication device. *Id.* ¶ 20; Doc. 73-1 at 75–76. He named Plaintiff and Martinez Verde as his drug suppliers immediately after his arrest. Doc. 66-1 at 77–79. Cruz stated during a sworn proffer with the State Attorney's Office (and reiterated later in a deposition pursuant to this lawsuit) that he had been obtaining drugs from Plaintiff and Martinez Verde at the Glory Road and Ruth Avenue addresses and had dropped off drug money at these same addresses. Doc. 66-5 at 13–14, 18–20, 22–24, 26–29; Doc. 66-6 at 7–10, 25–26, 28, 32, 34–36. He also confirmed that Plaintiff and Martinez Verde were the only drug suppliers who he would have called on his cellphone. Doc. 66-5 at 22.

### C. Plaintiff is Arrested Pursuant to a Warrant

After Cruz's arrest and proffer session, a warrant was issued for Plaintiff's arrest, based on the affidavit of Defendant Clark, on allegations of knowingly conspiring, combining, or confederating to knowingly sell, deliver, and/or purchase cocaine and methamphetamine. Doc. 83 ¶ 22. Plaintiff was arrested on April 25, 2017. *Id* ¶ 23. According to Plaintiff's deposition testimony, as he was being arrested, Defendant Starnes told him that the Sheriff's Office already had "all of his runners and drivers," and that it would be in Plaintiff's best interest to cooperate. Plaintiff claims he

4

responded that he didn't know what Starnes was talking about. Doc. 68 at 56–57. Plaintiff also testified that he asked Starnes whether he was being arrested "in retaliation for me not working with him," to which Starnes told Plaintiff to "quit making stuff up." *Id.* According to Plaintiff, besides just "going back and forth about it" at the scene, there was no other conversation between him and Starnes. *Id.* at 58. Plaintiff stated that he was arrested at gunpoint, but Starnes did not touch or strike him. *Id.* at 55–60. Martinez Verde was also taken into custody on similar charges. Doc. 83 ¶¶ 24–25. At trial, Plaintiff was ultimately acquitted of all charges. Doc. 44 ¶ 40; Doc. 81 ¶ 40.

According to Plaintiff's submissions, Sheriff Nocco later held a press conference in which he displayed a poster featuring images of individuals that had been arrested during the investigation, including Plaintiff. Doc. 73 at 13. Plaintiff claims that, at this conference, Sheriff Nocco asserted that Plaintiff was "killing people." *Id.* Defendants dispute this allegation, stating that it is unsupported by any evidence. Doc. 77 at 7–8.

**D. Plaintiff's History as a Confidential Informant**

Plaintiff stated at his deposition that he had previously served as a CI for the Drug Enforcement Administration ("DEA"). Doc. 70-5 at 42. He further explained that, in late 2016, DEA agent Jason Satterwhite asked him if he'd be willing to work as a CI for Starnes. *Id.* at 51–53. Plaintiff informed Satterwhite he could not, because Pasco County was too close to home; Starnes was not involved in that conversation.

5

*Id*. Plaintiff stated that he had spoken with Christopher Starnes five to eight times prior to his arrest, but had not had any issues with him or been threatened by him. *Id.* at 49.

## Procedural History

Plaintiff filed suit against Pasco County Sheriff Christopher Nocco and several Pasco County law enforcement officers. Doc. 44. In Count I, Plaintiff sues Sheriff Nocco or, in the alternative, the Defendant deputies, for false arrest under Florida law. *Id.* at ¶¶ 41–62. In Count II, he sues Starnes, Clark, Meissner, McInnes, and Tellier under 42 U.S.C. § 1983 for First Amendment retaliation. *Id.* at ¶¶ 63–68. In Count III, Plaintiff sues Sheriff Nocco for negligent supervision and retention under Florida law. *Id.* at ¶¶ 69–75. Defendants now move for summary judgment as to all counts. Docs. 66, 70. A hearing was held on both motions for summary judgment on September 13, 2022 (Doc. 101).[3]

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law after reviewing the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir.

---

[3] On the same day, the Court heard argument on pending summary judgment motions in a related case involving Martinez Verde's suit against the Pasco County Sheriff's Office.

2003). Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323–24; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden is discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249–50). "[U]nsupported conclusory allegations do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770 (quoting *Anderson*, 477 U.S. at 252).

### III.  DISCUSSION

The Court begins its analysis with Count II, the federal claim that gives this Court subject-matter jurisdiction over this matter.

In Count II, Plaintiff alleges that Defendants Starnes, Clark, Meissner, McInnis, and Tellier were acting under color of law for the Pasco County Sheriff's Office when they retaliated against him for exercising his First Amendment rights. Doc. 44 ¶ 64. Plaintiff claims that Defendants targeted him in their investigation because of his "prior history and social associations." *Id.* ¶¶ 65–66. He also claims that they "unlawfully and without probable cause arrested [him] and subjected him to unnecessary force." *Id.* ¶ 67. He adds that "such actions by Defendant Starnes were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to Defendant Starnes and he retaliated by arresting him." *Id.* Plaintiff states he "could not comply with [the Defendants'] demand to provide information about illegal drug activity" and asserts that the retaliatory arrest violated his right to free speech as guaranteed by the First and Fourteenth Amendments. *Id.* ¶¶ 67–68.[4]

In their motions, Defendants contend that summary judgment is warranted in their favor for Count II on qualified immunity grounds. Starnes argues that he is entitled to qualified immunity because both probable cause and arguable probable cause existed when the affidavit for the arrest warrant was submitted. Doc. 70 at 12. Assuming probable cause and arguable probable cause were lacking, he claims that qualified immunity still applies because there was no violation of clearly established

---

[4] The Complaint does not state whether these claims are brought against the deputies in their individual or official capacities. Doc. 44. However, at oral argument, Plaintiff's counsel clarified that the claims are against Defendants in their individual capacities only.

law to make out a First Amendment Retaliation claim. *Id.* The remaining Defendants named in Count II similarly argue that they are entitled to qualified immunity and summary judgment because probable cause and arguable probable cause existed for Plaintiff's arrest. Doc. 66 at 22–24. Even if they lacked both, the remaining Defendants assert that Plaintiff's First Amendment retaliation claim against them must fail because they were not present at Plaintiff's arrest, and Plaintiff fails to raise a genuine issue of material fact as to his claims. *Id*.

In his responses, Plaintiff argues that Defendants were not acting within the scope of their discretionary function when the alleged retaliatory acts occurred, and that there was no arguable probable cause for his arrest. Doc. 73 at 18; Doc. 74 at 12–13. Plaintiff also claims that Defendants created a false narrative that he was a known drug trafficker because he had previously declined to work as a CI for Starnes.[5] Doc. 73 at 14; Doc. 74 at 16.

Starnes replies and argues that Plaintiff has failed to raise a genuine issue of material fact as to his claims, that he makes only baseless arguments to suggest there was a lack of arguable probable cause, and that he provides no facts to suggest that he had been retaliated against for protected speech. Doc. 78 at 3–5. The remaining Defendants similarly argue that Plaintiff has not refuted their showing that the warrant

---

[5] Although Defendants argue that both motions should be treated as unopposed due to Plaintiff's untimely responses, the Court will consider Plaintiff's responses in its analysis. "[F]ederal courts have a strong preference for deciding cases on the merits rather than procedural technicalities." *Green v. Premier Telecomm. Servs., LLC,* No. 1:16-CV-0332-LMM, 2017 WL 4863239, at *9 (N.D. Ga. Aug. 15, 2017), *on reconsideration in part,* 2017 WL 6994888 (N.D. Ga. Nov. 9, 2017).

and arrest were supported by a reasonable investigation and probable cause, and that Plaintiff does not allege or show that they were even involved in his arrest. Doc. 77 at 3–10. Tellier and McInnis also note that they are not even mentioned in Plaintiff's response. *Id.* at 10.

### Qualified Immunity

Before analyzing the merits of Plaintiff's retaliatory arrest claim, the Court must first determine whether Defendants are entitled to qualified immunity, as they argue. *Vassilev v. City of Johns Creek*, No. 1:14-CV-0312-LMM, 2015 WL 12591737, at *8 (N.D. Ga. Sept. 29, 2015). Qualified immunity shields federal and state officials from money damages unless the plaintiff can establish that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). During a qualified immunity analysis at the summary judgment stage, the Court "must take the facts in the light most favorable to the party asserting the injury." *Robison v. Aruqueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

As detailed below, the Court finds that summary judgment is appropriate on Count II because Defendants are all entitled to qualified immunity. Defendants have successfully discharged their burden at each step of the qualified immunity analysis. First, there is no genuine dispute as to whether Defendants acted within their discretionary authority at all times relevant to Plaintiff's allegations. The burden then shifts to Plaintiff to show that qualified immunity is inappropriate. He fails to establish

Case 8:20-cv-00316-CEH-CPT   Document 103   Filed 03/06/23   Page 11 of 19 PageID 2720

that his constitutional rights under the First Amendment were violated by Defendants. He does not make the requisite showing for a retaliatory arrest claim—which is that a reasonable jury could find that he engaged in protected speech that was the but-for cause of his arrest. Plaintiff's claim fails on the requirement of causation because he does not set forth specific facts showing a lack of arguable probable cause for his arrest.

1. *Discretionary Authority*

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Discretionary authority includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties" and (2) were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). The Eleventh Circuit has held that "[a] police officer generally acts within the scope of his discretionary authority when making an arrest." *McDowell v. Gonzalez,* 820 F. App'x 989, 991 (11th Cir. 2020).

In his response, Plaintiff disputes that Defendant Starnes acted within the scope of his discretionary authority when he arrested Plaintiff. Doc. 74 at 15–16. He alleges Starnes "initiated a narrative that [Plaintiff] was a known drug trafficker" to "gain recognition," and that Starnes had previously worked with Plaintiff and knew that he provided valuable information. *Id.* at 16. He similarly argues that the other Defendants were acting outside the scope of their discretionary authority, but fails to elaborate on his argument beyond stating that he "disputes that Defendants were acting within the

11

scope of their discretionary function when the alleged retaliatory acts occurred." Doc. 73 at 18. He asserts that Clark and Starnes knew that Plaintiff was an active confidential informant for the DEA and that he was the "main focus" of the investigation "based solely on vehicles registered to him and his prior criminal history." *Id.* However, these allegations are irrelevant to the issue of whether the Defendants were acting pursuant to the performance of their duties and scope of their authority. As investigations and arrests are generally within the scope of an officer's discretionary authority, and Plaintiff has not provided evidence to suggest otherwise in this case, the Court finds that Defendants were acting pursuant to the performance of their duties and within the scope of their authority during the investigation and arrest of Plaintiff. *McDowell,* 820 F. App'x at 991. Thus, they were acting within their discretionary authority.

    2. *Protected Speech*

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate." *Gonzalez,* 325 F.3d at 1234. Here, Plaintiff must show both that his speech was protected and that he was arrested because of it. *Hartman v. Moore*, 547 U.S. 250, 261 (2006).

As to the first requirement, Plaintiff fails to clearly specify the protected speech that he alleges led to his arrest. Examples of constitutionally protected speech include the right to petition the government for redress, the right of access to the courts, and the right to speak without retaliation from the government. *See DeMartini v. Town of*

12

*Gulf Stream,* 942 F.3d 1277, 1288 (11th Cir. 2019). Plaintiff claims that he "spoke to Defendant Starnes and [Starnes] retaliated by arresting him. Plaintiff [] could not comply with their demand to provide information about illegal drug activity." Doc. 44 ¶ 67. Thus, he seems to suggest that he was arrested based on something he said to Starnes during the arrest. However, from the Complaint and Plaintiff's Responses, it is not clear whether he contends that he was arrested in retaliation for speaking to Starnes, or for declining to work as a confidential informant years before the arrest. Thus, Plaintiff fails to specify which act or acts of speech allegedly led to his arrest.[6]

    3. *Retaliatory Arrest and Arguable Probable Cause*

Even assuming Plaintiff demonstrated that his speech was protected, to defeat qualified immunity, he must also show that the protected speech was the "but-for" cause of the arrest. *Hartman*, 547 U.S. at 261. This means Plaintiff must prove that the arresting officer would not have made the arrest if Plaintiff had not engaged in his protected speech. *Id.* In short, the dispositive question becomes whether the officer had arguable probable cause to arrest the plaintiff. *Carter v. Gore,* 557 F. App'x 904, 908

---

[6] At oral argument, Plaintiff's counsel stated that his First Amendment retaliation claim was based on the right to freedom of association, rather than freedom of speech. This alternative claim is not detailed in the operative Complaint or Plaintiff's Responses to the motions for summary judgment. The Eleventh Circuit directs that parties are "not allowed to raise at oral argument [ ] new issue[s] for review." *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1263 (11th Cir. 2004); *see also Crouch v. Teledyne Continental Motors, Inc.,* 511 F. App'x 822, 824 n.1 (11th Cir. 2013) (declining to address an issue raised for the first time during oral argument). Likewise, this Court has stated that issues raised during oral argument are not properly before the Court. *Starbuck v. R.J. Reynolds Tobacco Co.,* 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018). Accordingly, the Court will not consider this alternative theory of the claim. Regardless, as discussed *infra*, there was arguable probable cause for Plaintiff's arrest, and Defendants would be granted summary judgment on a freedom of association claim as well.

13

(11th Cir. 2014). Thus, a defendant accused of First Amendment retaliatory arrest can defeat a claim at summary judgment, based on lack of causation, if he can show there is no genuine dispute that there was arguable probable cause to arrest. *Phillips v. Irvin*, 222 F. App'x 928, 929 (11th Cir. 2007) (holding that to defeat a claim at summary judgment, the defendant "only needed to establish *arguable* probable cause, which [he] did"); *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1289 (S.D. Fla. 2012). And in order to strip officers of their qualified immunity and bring a First Amendment retaliatory arrest claim, the plaintiff must affirmatively show an absence of arguable probable cause. *Johnson v. Dekalb County, Georgia*, 391 F.Supp.3d 1224, 1247 (N.D. Ga. 2019) (citing *Redd v. City of Enterprise,* 140 F.3d 1378, 1384 (11th Cir. 1998) ("[W]hen an officer has *arguable* probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time he is arrested.")).

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant [] could have believed that probable cause existed to arrest." *Poulakis v. Rogers*, 341 Fed. Appx. 523, 527 (11th Cir. 2009). In turn, probable cause to arrest for the commission of a crime is present when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). In considering whether probable cause to make an arrest exists, the Eleventh Circuit instructs that an arrest "must be objectively reasonable based on the totality of the

circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Id.* The relevant offense-specific inquiry here is whether arguable probable cause existed to believe Plaintiff was knowingly conspiring, combining, or confederating to knowingly sell, deliver, and/or purchase cocaine in violation of Chapters 893.135(1)(b)1.c., and 893.135(5), Florida Statutes, and methamphetamine in violation of Chapters 893.135(1)(f)1.c. and 893.135(5), Florida Statutes. *See* Doc. 67-2.

      Plaintiff does not offer much in the way of an argument that there was no arguable probable cause to arrest him. In his Response, he simply states that there was not arguable probable cause and that Defendant Starnes should be liable because of unspecified "false statements in the sworn affidavit used to obtain the arrest warrant." Doc. 74 at 19–20. He also claims that "Detective Brad Clark had to question Eder Alonso Cruz at his proffer in order to 'refresh' his memory" and that "there was no evidence that Plaintiff was involved in any criminal activity." *Id.* Plaintiff does not point out which specific statements he is claiming were false in the warrant affidavit. Additionally, his claim regarding Cruz's proffer session is unsupported and unclear, and his bare claim that there was no evidence of his involvement in any criminal activity is controverted by the warrant affidavit, as well as the records of the

15

investigation and the numerous depositions taken for this case. A party cannot defeat summary judgment by relying on conclusory allegations.

To the contrary, based on the evidentiary record, no reasonable jury could find that Defendants lacked arguable probable cause to arrest Plaintiff. Plaintiff was arrested on the basis of a valid warrant backed by a lengthy investigation and probable cause, not because of any protected speech or his refusal to speak. A finding of arguable probable cause to arrest him is supported by numerous undisputed facts in the record. First, a judge agreed that sufficient probable cause existed to issue a warrant for Plaintiff's arrest. Doc. 67-3. Next, his vehicle was regularly spotted at locations visited by Cruz and Camacho, respectively a known drug trafficker and a suspected drug trafficker. Doc. 67-1 at 62–64. These suspicions were corroborated by information deputies learned from undercover drug buys and Cruz's phone calls to his drug suppliers. Doc. 83 ¶¶ 13–18; Doc. 67-1 at 67, 84–85. Finally, Cruz's post-arrest and proffer statements corroborated the investigation conducted by the Pasco County Sheriff's Office in that he identified Plaintiff as one of his drug suppliers (Doc. 66-1 at 77–79) and stated that he purchased drugs from Plaintiff and Martinez Verde at the addresses deputies had been observing. Doc. 66-5 at 13–14, 18–20, 22–24, 26–29. In summary, Plaintiff has not established that a violation of his clearly established constitutional rights under the First Amendment by retaliatory arrest without arguable probable cause to arrest him existed here, and Defendants are thus entitled to qualified immunity.

    4. *Clark, Meissner, Tellier, and McInnis' Involvement in Plaintiff's Arrest*

Defendants Clark, Meissner, Tellier, and McInnis argue that Plaintiff's retaliatory arrest claim against them must also fail for a second reason—which is that he fails to even allege that they arrested him, much less raise a genuine issue of fact as to that point. Doc. 66 at 22–23. The Court agrees. It is undisputed in the record that Plaintiff was pulled over and arrested by Starnes alone. Doc. 68 at 55; Doc. 73-3 at 17. And as the Defendants point out, Plaintiff testified that he has "no idea" which deputies were present at the arrest scene later on, other than Starnes. Doc. 68 at 58–60. Accordingly, Plaintiff's claim against the Defendants who were not involved in his arrest would fail, even if he could show that there was no arguable probable cause for his arrest.

## IV.  CONCLUSION

For the reasons stated above, Defendants Starnes, Clark, Tellier, Meissner, and McInnis are entitled to summary judgment on Count II.

Plaintiff's remaining claims in Count I (False Arrest) and Count III (Negligent Supervision and Retention) arise under Florida law. Doc. 44 at 9, 15. The resolution of those claims will require analysis of Florida Law. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining

claims.[7] *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly, it is hereby **ORDERED:**

1. Defendants' Brad Clark, Russell Meissner, Steve McInnis, and Adam Tellier's Motion for Summary Judgment (Doc. 66) is **GRANTED** as to Count II, as Defendants Brad Clark, Russell Meissner, Steve McInnis, and Adam Tellier are entitled to qualified immunity.

2. Defendant Christopher Starnes' Motion for Summary Judgment (Doc. 70) is **GRANTED** as to Count II, as Defendant Starnes is entitled to qualified immunity.

3. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in Counts I and III. Counts I and III are **DISMISSED WITHOUT PREJUDICE.**

---

[7] The period of limitations for any claim asserted under subsection (a) [establishing supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

4. The Clerk is directed to enter Judgment in favor of Defendant Starnes and Defendants Clark, Meissner, McInnis and Tellier, and against Plaintiff, Wiltrober Hernandez, as to the federal claim in Count II.

5. The Clerk is further directed to terminate any pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 6, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties